*New-London,*
July, 1851.

Strong
*v.*
Crosby.

## STRONG *against* CROSBY and others.

A parol lease of land for three years, being void by the statute of frauds, the
tenancy, if continued beyond a year, becomes a tenancy from year to year.

Where the tenants under such lease were three partners, who, during the sec-
ond year, dissolved their partnership, and two of them claimed to have put
an end to their tenancy, at that time, and consequently to their liability for
rent; it was held, that this might be done, by any words or acts of theirs
fairly importing a surrender of the premises; and whether they had so done,
was altogether a question of fact for the jury, upon the evidence before them,
to determine.

Where it appeared from the evidence in such case, that on the dissolution of
the partnership, two of the lessees, after giving notice to the lessor of their
surrender, added, that they *had given the leased premises* to the other les-
see, *as his share of the company effects,* and that he must pay the rent
himself; to which the lessor immediately objected; it was held that such
giving of the leased premises to the other lessee, as his share, instead of
proving a termination of the lease by them, was rather an act of affirmance
or ratification, and was very far from a renunciation of the lease, or of pos-
session upon the terms of it.

THIS was an action of *assumpsit,* to recover the rent of a
factory and the buildings connected therewith; tried on the
general issue, at *Norwich, August* adjourned term, 1850.

On the trial, the plaintiff claimed, and introduced evidence
to prove, that the defendants leased of him a factory situated
in *Norwich,* together with two dwelling-houses, for one year,
from the first of *April,* 1846, to the first of *April,* 1847; the
factory at 1,500 dollars a year, one house at 80 dollars, and
one at 30 dollars; all which was proved and admitted, except
as to the last mentioned house, which was submitted to the
jury.

The plaintiff then claimed, and introduced evidence to
prove, that in *February,* 1847, the defendants agreed with the
plaintiff for a new lease of the factory at 1,650 dollars a year,
for three years from the 1st of *April,* 1847; and that the de-
fendants continued to possess the premises until the 1st of
*November,* 1848, when, as they claimed, they surrendered
them to the plaintiff, and he discharged them from any fur-
ther liability.

The defendants denied, that they hired the premises, ex-
cept for the year ending 1st of *April,* 1847, though they con-
tinued to possess and enjoy the premises as before, until the

New-London, July, 1851.

Strong v. Crosby.

1st of *June*, 1847, without notice to the plaintiff of any change.

The defendants claimed and introduced evidence to shew that the new lease was made by *Hale*, one of the defendants, and though in the company name, without and against the consent of the other defendants; and that *Hale* was in fact forbidden to do it; of all which the plaintiff had notice before the contract was closed; and further, that on the 1st day of *June*, 1847, the defendants dissolved partnership, and *Hale* took, as his share, the interest in the lease and premises, when the other defendants (as they claimed) no longer had possession and enjoyment thereof; that the lease being by parol, was void, and the tenancy only from year to year; and therefore, that any continuance of occupation and possession by *Hale*, or any one holding over by him, since the partnership was dissolved in *June*, 1847, and the withdrawal of the other defendants at that time, (as they claimed,) was not their possession, and could not subject them to pay rent, but *Hale* alone was liable. The defendants insisted, that in *September*, 1847, they informed the plaintiff of their dissolution in *June* previous, and that they had left the premises to *Hale*, as his part, and had had since then nothing to do with them, but *Hale* was running the factory for himself.

The plaintiff introduced evidence, and claimed, that the second lease was made by and for the company of *Crosby*, *Hale & Conkey*, and in the company name; that it was made with their knowledge and consent; and that it was ratified and actually enjoyed, by them personally, as a company, until the period of their dissolution; and the plaintiff insisted, that he had no knowledge or notice whatever before *September*, 1847, of any dissatisfaction of *Crosby* and *Conkey* about the lease; that at that time, *Crosby* and *Conkey* did inform him, they had been dissatisfied, and that the company was dissolved in *June* previous, and they had given the premises to *Hale*, as his share, and they were no longer connected with them, and *Hale* was running the factory, and he would pay the rent; to which the plaintiff immediately replied, he had leased the factory to *Crosby*, *Hale & Conkey*, and should not take *Hale* alone for the future rent. And the plaintiff claimed, that he never knew of any other change in the business, controul or possession of the factory until *November*,

1848, when *Hale* stopped the factory, and delivered the key to the plaintiff.

The plaintiff claimed to the court, that as he had leased the factory to *Crosby, Hale & Conkey*, two of the defendants could not terminate their relation to the plaintiff, as landlord in the premises, unless all of that former company should restore possession.

The defendants did not claim, that *Hale* had done it, or abandoned the lease, but conceded he had not, but they claimed, that *Crosby* and *Conkey*, could, at the end of any year, (though *Hale* would not,) abandon the premises to the plaintiff, and cease to be tenants.

The court, *pro forma*, charged the jury in accordance with the defendants' claim, but left the fact to the jury, whether *Crosby* and *Conkey* had in fact for themselves abandoned and surrendered possession to and for the plaintiff, or only to and for *Hale*, for his controul and enjoyment under the lease; which last the plaintiff claimed was the fact; contending that if only the latter, they had not ceased to be liable as tenants; if the former, they had.

The court said, the dissolution and notice of it, was no surrender; nor was the personal absence of *Crosby* and *Conkey* from the factory, nor *Hale's* taking the lease as his portion, though these were circumstances to be considered upon the main fact. Fairness required the plaintiff should have notice from *Crosby* and *Conkey,* that they did surrender their possession and controul to the plaintiff. This they could do, and be freed. Did they do it? The law prescribes no form. A delivery of the key would answer; and so any words and acts, which, fairly interpreted, are a surrender to the plaintiff of their possession.

The plaintiff admitted, and the jury were instructed, that the lease for three years being by parol, was void, and therefore the tenancy was from year to year; and both parties agreed, that the holding over by a tenant, was a renewal of the former lease for another year. The plaintiff admitted, and the court held, and charged the jury, that *Hale's* continuing to possess the factory, or holding over, was not of course the holding over of all the defendants; and that he could not continue *Crosby* and *Conkey* tenants against their will; but whether the possession and controul of all the defendants

New-London,
July, 1851.

Strong
v.
Crosby.

had terminated, or were continued as at the first, and so the defendants remained liable as tenants, must depend upon whether *Crosby* and *Conkey* had, or had not, surrendered their possession to the plaintiff as aforesaid.

All questions of fact were left to the jury.

The court instructed the jury, if they found, as claimed by the plaintiff, that the second lease was made by the firm, or ratified by them as their own, by all of the defendants, and that they did possess or controul the premises under it, and did not surrender possession to the plaintiff until *November*, 1848, under the principles laid down by the court, their verdict should be for the plaintiff, and to recover any balance of rent down to that time ; but otherwise, for the defendants *Crosby* and *Conkey*. But if they found that *Crosby* and *Conkey* had, at or before the end of any year of their occupancy, abandoned and surrendered their possession of the premises to the plaintiff, according to the principles laid down by the court, then *Crosby* and *Conkey* are not liable after that year.

The jury returned a verdict for the plaintiff against all the defendants for rent down to *November*, 1848 ; and the defendants moved for a new trial for a misdirection.

*Wait* and *E. Perkins*, in support of the motion, contended,
1. That the lease from the plaintiff to the defendants, for three years from *April* 1, 1847, to *April* 1, 1850, was *void*, by the statute of frauds. *Stat.* 405, § 1. *Eaton* v. *Whitaker*, 18 *Conn. R.* 222. 1 *Sw. Dig.* 260.

2. That if the defendants entered into the occupancy of the mill, under the lease, it was but a tenancy from year to year, to be terminated, at the expiration of each year, as either party elected, or continued, by the acquiescence of both.

3. That the lease being void by the statute of frauds, and the occupancy of the premises by the defendants, a tenancy from year to year only, then if either of the three defendants, (the partnership being dissolved,) on going out of the firm, abandoned, during the year, the actual occupancy of the mill, and notified the plaintiff both of the dissolution and such abandonment, the holding over of the third defendant into the next year, would not be a holding over against the other two defendants, and they would not be subjected to the payment

of rent. It has been held, that where there is a parol lease for a certain time, either party may determine it, at the end of the term, without notice. *Ellis* v. *Paige*, 2 *Pick*. 71. *in notis*. *Moshier* v. *Reding*, 3 *Fairf*. 478. *Hamit* v. *Lawrence*, 2 *A. K. Marsh*. 366. This being a parol lease for a certain time, all that *Crosby* and *Conkey* had to do, to exonerate themselves, was, to walk out of the premises, on the last day of *March*, 1848, or on any prior day during the year. "Fairness" might require notice from them to the plaintiff, but *law* did not.

4. That *Crosby* and *Conkey* gave up the premises to the plaintiff in *June*, 1847, when the firm of *Crosby, Hale & Conkey* was dissolved. The letter from *Crosby* and *Conkey* to the plaintiff, in *September*, 1847, and other evidence, constituted a legal abandonment to the plaintiff; and it was the duty of the judge so to instruct the jury.

5. That where a lessee holds over, the law implies a new contract similar to the former lease; but there is no such renewal of the original contract, that an action can be maintained upon it for rent; the only remedy being upon the new implied contract. *Brewer* v. *Knapp* & al. 1 *Pick*. 332.

6. That *Hale's* holding over, under the circumstances of the case, was a *trespass;* and his former partners were not liable for his tortious acts.

*Strong* and *Foster*, contra. The plaintiff claimed, that he had proved a letting to all the defendants, and a use and occupation by them for the whole time. The defendants denied it. They admitted a hiring for the year ending *April* 1st, 1847, and a possession till 1st of *June*, 1847, without notice of change. The defendants claimed, that the second lease was by *Hale* alone. The plaintiff claimed it was by all.

The claim as to delivery of possession, by two out of three partners, as made by the defendants, was sustained by the court. This law is questionable at least; but the defendants cannot complain. As there was a dispute on the facts between the parties, the court could do no less than to leave the question of fact, of abandonment or no abandonment, to the jury. That dissolution of partnership was no surrender. That the personal absence of *Crosby* and *Conkey* was no surrender, is unquestionable law. The defendants indeed did

not claim otherwise. The court went quite far enough in saying to the jury, that these were circumstances to be considered on the main fact.

New-London,
July, 1851.

Strong
v.
Crosby.

The charge of the court as to parol letting for three years, was according to the admission of the parties on both sides, and is unexceptionable. So also as to the claim of the holding over, by *Hale* alone ; that such a holding was not of course a holding of all the defendants. Of this, at all events, the defendants cannot complain. The disputed question of fact, whether *Crosby* and *Conkey* did continue to hold or not, was properly submitted to the jury.

The instruction given to the jury, as detailed at the close of the motion, is strictly correct.

There is no question of law on this motion, which was not decided in favour of the defendants.

ELLSWORTH, J. The questions of law which were made in this case, being ruled in favour of the defendants, they can have no cause of complaint on account of the law. Most evidently, the cause was one for the consideration of the jury ; and so far as the evidence before them, is detailed in the motion, we think the jury have come to a correct conclusion in their verdict.

The motion shows, that the defendants, as partners, under the name of *Crosby, Hale & Conkey*, occupied the plaintiff's mill, under a lease from *April*, 1846, to *April*, 1847, at an annual rent of 1,500 dollars ; that in *February*, 1847, a short time before the termination of the lease just mentioned, a new lease was obtained in the company name, to continue for three years from the time when the first ended, at the farther annual rent of 1,650 dollars. *Crosby* and *Conkey*, on the trial below, claimed, that *Hale*, who personally procured the new lease, although then a partner with them, had no authority to take such a lease, in the name and behalf of *Crosby, Hale & Conkey* ; that he had no authority at first, and they had never ratified the lease, by any subsequent assent or acquiescence. Here the plaintiff and defendants were at issue ; the plaintiff insisting, that the evidence before the jury fully proved, that *Hale* was not only authorized, as a partner, to enter into the contract, and so bound the company, but that they afterwards ratified and confirmed

it, especially by *transferring* the lease, and the possession *under it,* to *Hale,* as *his* share of the partnership effects, when the partnership was dissolved, in *July,* 1849. The jury found this issue in favour of the plaintiff.

*Crosby* and *Conkey* further claimed, that the lease, being only by parol, it must be held to be a lease from year to year; and hence, that *they* could put an end to its continuance, and terminate *their* tenancy, at the end of the second year; for up to that time, they admitted their liability had continued, since the company were actually in possession during the whole of the first year, and up to the month of *July,* in the second year. The court concurred in this claim of the two defendants, and instructed the jury, that *Crosby* and *Conkey* could terminate *their* tenancy of the mill, provided they took proper steps to accomplish it, at the end of the second year, and so could put an end to their liability for rent after that time; but that it was, upon the proof in the case, altogether a question of fact, if they had. The jury must say, whether the two defendants had actually done anything of this character or not. The plaintiff denied that they had; the two defendants asserted they had; and here the matter was left with the jury. The court was not asked to put a construction on the evidence offered upon this point; nor would it have been proper for the court so to have done, had such request been made. But it was not made; and the whole evidence went together to the jury. In commenting upon this evidence, in its bearing upon the contested point, the court very properly, as it seems to us, illustrates its meaning, by stating certain specific acts, which, if fairly and openly done by the two defendants, might be held to put an end to *their* relation as tenants, notwithstanding the lease and the continued personal occupancy of *Hale* under it. The general rule which was laid down, by the court, for deciding whether all the defendants, or only *Hale,* actually held under the lease, notwithstanding the dissolution of the partnership, was as fair and liberal towards the two defendants, as they could, with any propriety, ask from the court : " any words or acts of the two defendants, which, fairly interpreted, are a surrender to the plaintiff, by *Crosby* and *Conkey,* of *their* possession," is the language of the charge. Is this rule too stringent? We think not. If in truth all the defendants

continued to be tenants, as the plaintiff insisted was the fact, *New-London,*
until the possession was finally ended, and the key returned July, 1851.
to the plaintiff, in *October*, 1848, whether the mill was per-              Strong
sonally occupied, by one more of the number, under the                       *v.*
lease, it is manifestly just, that all should remain liable for   Crosby.
the rent.   The jury must have found, that the defendants
had never repudiated the lease.   *Crosby* and *Conkey* had
given notice, it is true, in *September*, 1847, that they were
no longer connected with the mill themselves, and should not
hold themselves liable for future rent; but this notice was
accompanied with this reason for their unwillingness to con-
tinue liable, that they had been dissatisfied, and upon their
late dissolution, had given the leased premises to *Hale* as *his
share of the company effects*, and that *Hale* would pay the
rent himself, to which the plaintiff immediately replied, and
objected; and there the business was left.   Their giving up
the lease as his share, instead of putting an end to its con-
tinuance, is rather an act of affirmance and ratification, than
otherwise.   The plaintiff most justly insists, on his part, that
the original lessees shall be held liable for rent until they, or
their assignee, by some open and unequivocal act, put an end
to the tenancy and give up possession; and that each lessee,
if he will separately claim exemption, shall do whatever *he*
can do, both by words and acts, towards putting an end to
the existing lease, and any possession under it, by the les-
sees, or some of them: assigning the lease to one partner,
and declaring that that partner will alone pay the rent, be-
cause he takes the lease as his share, and runs the mill on
his own account, is very far from a renunciation of the lease,
or of possession upon the terms of it.

We are not called upon to revise that portion of the
charge, which was in the two defendants' favour, that two of
three joint lessees can be held to have given up to their land-
lord *their* possession, and so terminated their relation as ten-
ants, while one of their number insists upon the continuance
of the lease, and actually holds the plaintiff out of posses-
sion by virtue of it.   This is a very grave question worthy
of much consideration.   It is forcibly said, by the plaintiff's
counsel, the defendants were let into possession jointly, and
they must jointly surrender it, or not at all.   Perhaps how-
ever, as the lease is good only for one year, a part of the

lessees may be permitted to withdraw and give up posses-
sion, as far as they are able, to their landlord, although their
co-lessee will not unite with them in the act, but obstinately
continues his possession, in defiance of their common land-
lord. This question, however, is now unimportant, because
the court, *pro forma,* ruled in favour of the defendants.

In this opinion the other judges concurred.

New trial denied.